UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:16-CR-22-ART-HAI |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| WILLIE MCCLOUD, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Willie McCloud is charged with distribution of fentanyl resulting in severe bodily injury in violation of 21 U.S.C. § 841(a)(1), a Class A felony, and conspiring to distribute heroin and fentanyl in violation of 21 U.S.C. § 846, a Class C felony. He has pled not guilty, and his trial has been continued pending a determination of whether he is competent to proceed. D.E. 47.

On December 2, 2016, Defendant, through counsel, filed a motion for a psychological and competency evaluation. D.E. 44. At the motion hearing on December 6, 2017, the Court directed defense counsel to obtain Defendant's past medical records and scheduled a follow-up telephonic conference to discuss these records. D.E. 47. During the telephonic conference, the United States made an oral motion requesting that the competency examination include a sanity evaluation. D.E. 50. The Court granted both motions. *Id*.; D.E. 51. On January 3, 2017, the Court, upon the required findings, ordered the psychiatric or psychological examination pursuant to 18 U.S.C. § 4247(b) to be performed at the Federal Medical Center-Lexington ("FMC-Lexington") in Lexington, Kentucky. D.E. 53. Defendant was evaluated at FMC-Lexington

1

from January 4 through March 20, 2017. D.E. 58 at 2. All parties had access to the Psychiatric Report ("the Report") issued by Dr. Judith Campbell, Ph. D., following this evaluation. *Id*.

On May 2, 2017, the Court conducted a competency hearing in this matter, per 18 U.S.C. §§ 4241 and 4247(d), in London, Kentucky, during which Dr. Campbell testified via videoconference from the United States Courthouse in Lexington, Kentucky. D.E. 66. The Court heard argument from all counsel. *Id*. Although Dr. Campbell opined that Defendant was competent to stand trial, Defendant argues that he cannot be found competent without further testing because (1) despite being prescribed medication, Defendant continues to suffer from a severe personality disorder, (2) the Report indicates that it is unclear if Defendant suffers from a mood or thought disturbance, and (3) Dr. Campbell testified that a mood or thought disorder coupled with a personality disorder could impact competency to stand trial. However, after a full hearing in compliance with the governing statute, the evidence does not preponderate in favor of finding that Defendant is not competent. For the reasons discussed below, the undersigned **RECOMMENDS** a finding of competency to stand trial.

I.

Section 4241 codifies the competency principles of *Dusky v. United States*, 362 U.S. 402 (1960). To be competent under this standard, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as a factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402; *see also* 18 U.S.C. § 4241(a) (phrasing the test as whether a defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"). 18 U.S.C. § 4247(d) governs the competency hearing, and assures certain trial-type rights. These include the right to confront and cross-examine witnesses, and the right to participate in the

hearing. *See id.*; *see also* 18 U.S.C. § 4241(c) (referring to the hearing procedures outlined in section 4247(d)).

Ultimately, per section 4241(d), a defendant is not competent if, "after the hearing, the court finds by a preponderance of the evidence that the defendant" meets the incompetency definition of section 4241(a). This framework suggests that the party raising the issue of competency—here the Defendant—bears the burden of proof, *see United States v. Rothman*, No. 08-20895-CR, 2010 WL 3259927, at *6 n.4 (S.D. Fla. Aug. 18, 2010) ("The present statute does not speak in terms of whether the government or the defendant has the burden of proof, it only mandates that whoever is seeking to prove incompetence has the burden.") (citing *United States v. Izquierdo*, 448 F.3d 1269, 1276-77 (11th Cir. 2006)), although the cases are in disagreement as to the burden allocation. *Compare United States v. Chapple*, No. 94-5048, 1995 WL 6147 at *2 (6th Cir. Jan. 6, 1995) (burden is on United States) and *United States v. Sally*, 246 F. Supp. 2d 970, 976 (N.D. Ill. 2003) (burden is on the United States) *with United States v. Simmons*, 993 F. Supp. 168, 170 (W.D.N.Y. 1998) ("The burden to prove a lack of competence is on the defendant."). Although the United States Supreme Court has not directly addressed the burden issue under § 4241(d), the Court has suggested in dicta that the defendant bears the burden. *See Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence.").

However, in the context of a competency determination, the issue of proper burden allocation is only material "in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." *Medina v. California*, 505 U.S. 437, 449 (1992). In this case, regardless of the

3

burden allocation, the evidence preponderates towards a finding that Defendant is competent to stand trial.

## II.

The Report, prepared by Dr. Campbell, is based upon her personal interactions with Defendant, the results of administering the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV) and the Minnesota Multiphasic Personality Inventory, Second Edition, ("MMPI-2"), a personal history questionnaire, staff and medical staff observations, analysis of Defendant's medical records, phone interviews with Hon. Brandon Storm and AUSA Jason Parman, and a series of competency related questions, as well as individual clinical interviews. D.E. 58 at 2-3. Further, Dr. Campbell analyzed Defendant's history, course of evaluation, and testing performance in light of the applicable competency standards.

Dr. Campbell's report is a thorough and comprehensive assessment of Defendant's history, mental and psychiatric condition, and circumstances. The Report states that, upon arrival at FMC-Lexington, Defendant "did not appear to be suffering from acute distress [, and] [w]hile he reported a history of treatment for Posttraumatic Stress Disorder (PTSD) and Bipolar Disorder, he did not appear to be suffering from acute symptoms of mental illness." *Id*. at 4. Moreover, Dr. Campbell noted that Defendant did not have any problems understanding or following directions provided by correctional staff, interacted appropriately with other inmates, and appeared to "function normally in carrying out his daily activities[.]" *Id.* at 5. Based upon his self-report, Defendant was initially prescribed Zoloft for his anxiety and depression, but this medicine was not helpful to his symptoms, and he was later prescribed Buspar. *Id*. Defendant "indicated this medication offered him some relief and his symptoms were much improved by the end of the valuation period." *Id*.

4

Defendant's performance on the WAIS-IV indicates that he possesses intellectual abilities scores in the "Average to High Average range." *Id.* at 5. Defendant achieved a Verbal Comprehension Index score (VCI) of 107, which falls in the Average range, and a Perceptual Reasoning Index composite score (PRI) of 111, which falls in the High Average range." *Id.* He had a Working Memory Index score (WMI) of 128, which falls in the Superior range, and a Processing Speed Index (PSI) of 79, which falls in the Borderline range. *Id.*[1] Finally, Defendant had a Full Scale IQ (FSIQ) of 108, which falls in the Average range, and a General Ability score of 110, which falls into the High Average range. *Id.*

The Report also indicated that Dr. Campbell administered the MMPI-2, and Defendant's scores and performance "suggest [that he] is very immature and alienated, and tends to manipulate others for his own gratification." *Id.* at 6. "Overall, his performance on the MMPI-2 is suggestive of a severe personality disorder and indicates he has a tendency to abuse illicit substances." *Id*.

Defendant also provided written responses to "a series of open-ended, competency related and personal history questions." *Id.* His responses "were thorough and adequate, and reflected an understanding of the criminal justice system as well as the charges against him." *Id*. Additionally, Defendant "was able to elaborate and demonstrated a sophisticated understanding of the court process, his criminal charges, and possible consequences of prosecution and conviction." *Id*. Further, he "was able to engage in discussions which suggest he is able to participate in preparing his defense and understands the crime he is alleged to have committed." *Id*.

The Report further addressed Defendant's general understanding of the criminal proceedings against him and his ability to communicate with counsel. He "demonstrated a

---

[1] This comparatively low score "may be explained by [Defendant's] lengthy history of chronic substance abuse." *Id*.

5

thorough understanding of basic legal concepts and the nature of legal proceedings in general, and an ability to apply this knowledge to the facts of this case." *Id*. at 9-10. Further, he

> understood that he has an attorney and accurately identified [him]. He understood the role of a defense attorney as his advocate. He understood his attorney would be investigating the allegations against him, preparing a defense, and representing him in court. [Defendant] understood the importance and relevance of a defendant working collaboratively with his attorney and conversing openly with him about his case. He was able to discuss the possible outcomes of his pending prosecution. [Defendant] engaged calmly, cooperatively, productively, and realistically in interviews with the examiner about his case and would be expected to do the same with his attorney.

*Id*. at 9. The Report therefore concluded that Defendant "meets the basic criteria of competency to stand trial." *Id*. Furthermore, "he is not currently suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him." *Id*. at 11.

The Report includes diagnoses of opioid use disorder and other specified personality disorder with antisocial features. *Id*. at 8. However, the Report indicated that "[f]eatures of a personality disorder, while they can result in considerable impairment in one's social functioning, are seen as more intentional or volitional than are symptoms of a psychotic disorder." *Id*. at 9. They "are not considered severe mental illness [.]" *Id*. Accordingly, the Report distinguished a diagnosis that includes certain features of a personality disorder from a mental illness that would impair competency, and stated that "individuals [with certain features of a personality disorder] have control over their presentation unlike those who suffer from acute mental illness impairing their reality testing." *Id*.

During her direct testimony, Dr. Campbell confirmed the information contained in the Report. She discussed, at length, why she believes that Defendant's diagnosis that he possesses certain antisocial features of a personality disorder will not impair his competency to stand trial.

6

Regarding the results of the MMPI-2 test administered to Defendant, Dr. Campbell explained that, although the MMPI-2 in this case showed indicators of a severe personality disorder, this test is not used to actually diagnose personality disorders.  Instead, it provides a snapshot of a person's functioning personality to be evaluated in the entire context of the examination.  Dr. Campbell reported that Defendant was polite, cooperative, and pleasant during his examination, which does not conform to the results of the MMPI-2.  She explained that personality disorders are considered to be "volitional" and within a person's control, and therefore, persons suffering only from certain features of a personality disorder can control their behavior.  Dr. Campbell reported that Defendant was in control of himself during the examination, and the fact that he possesses antisocial features of a severe personality disorder would not prevent him from cooperating or understanding the proceedings against him.  Additionally, she stated that there was not enough evidence in Defendant's personal history to fully diagnose him with an antisocial personality disorder.

Dr. Campbell further explained that, although the combination of a severe personality disorder and a mood or thought disturbance might impair one's ability to stand trial, no issue arises in this case because Defendant did not appear to be suffering from a mood or thought disturbance.  She reported that, in her interactions with Defendant, there was no evidence of perceptual disturbance or hallucinations. Additionally, although Defendant reported experiencing anxiety and was prescribed Buspar for his symptoms, Dr. Campbell had difficulty determining whether his anxiety and agitation arises from his extensive substance abuse or whether he actually suffers from a mood disturbance.  Either way, she reported that Defendant's competency to stand trial would not be impaired because he showed no difficulty in comprehending matters

related to his case. She stated that, although Defendant is prescribed medication to help alleviate the symptoms of his anxiety, this medication does not affect his perception of the case.

Defendant raises no challenge to Dr. Campbell's qualifications. Instead, Defendant argues that further investigation and testing are required to determine whether he suffers from a mood or thought disturbance based on Dr. Campbell's specific observation, written on page 8 of the Report, that states, "It is therefore recommended he [Defendant] be further evaluated regarding the presence of a mood or thought disturbance once his current case is adjudicated." *Id*. at 9.[2] Specifically, Defendant argues that he has been prescribed medicine for his anxiety and agitation, and even with this medication, he continues to suffer from symptoms of a personality disorder. Additionally, Defendant emphasizes that Dr. Campbell stated that a severe personality disorder, coupled with a mood or thought disturbance, could impact a person's competency to stand trial, and the Report is inconclusive about whether he suffers from a mood disturbance.

In response, the government stated that Dr. Campbell was "unequivocal" that Defendant is competent to stand trial, and emphasized that he has average intelligence, an average IQ score, and no delusional or irrational thoughts. Specifically, the government emphasized that, although Dr. Campbell testified that she could not determine whether Defendant suffers from a mood or thought disorder because she could not identify his source of anxiety, she stated that whether such anxiety arises from his substance abuse history or another source is irrelevant as anxiety does not affect his ability to understand the nature of the legal proceedings against him. Additionally, the government discussed the volitional aspect of Defendant's personality disorder and his ability to control his personality, and noted that he functioned normally during the evaluation and showed a superior understanding of the legal process during his interaction with

---

[2] The sanity report also states that "it is not totally clear whether [Defendant] suffers from a mental illness or mood disturbance as noted in the competency evaluation [.]" *Id*. at 15.

8

Dr. Campbell. Finally, the government stated that there is no evidence that Defendant is unable to understand the proceedings against him such that he cannot assist in his defense.

### III.

The Report and Dr. Campbell's testimony support a finding that both prongs of the *Dusky* competency standard are met in this case, and Defendant has not produced any evidence to the contrary. The testimony of Dr. Campbell supports a conclusion that Defendant is likely suffering from an opioid use disorder and a personality disorder with antisocial features. Section 4241(d) requires that any mental disease or defect render the defendant "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). The evidence in this case is insufficient to support such a finding. Dr. Campbell testified that Defendant was in control of himself at all times, was able to adequately communicate, understand and answer questions, and showed no signs of perceptual disturbance or hallucinations. Moreover, Dr. Campbell testified that Defendant understood that he was involved in a criminal case and the nature of the proceedings against him. During the examination, he "displayed a thorough understanding of the proceedings against him and demonstrated sufficient present ability to consult with his attorney regarding the charges against him." D.E. 58 at 10.

Additionally, Dr. Campbell, who reviewed Defendant's personal history and mental health records, testified that his anxiety and medication do not impair his ability to understand the proceedings against him. She explained that, although it is unclear whether Defendant's anxiety results from his severe substance abuse history or another source, he showed no difficulty in comprehending all matters related to his case, and therefore, there are no competency concerns. Similarly, she explained that his diagnosis of possessing antisocial

features of a personality disorder would not prevent him from cooperating in or understanding the proceedings against him. Dr. Campbell emphasized that there was not enough evidence in Defendant's personal history to give him a full diagnosis of antisocial personality disorder. Finally, she explained that there was no evidence that Defendant was presently suffering from a mood or thought disturbance that would affect his competency. Indeed, she said she saw no evidence of any thought disturbance.

Defense counsel's assertion that the Report indicates Defendant's competency to stand trial may be impaired because he possesses a personality disorder and may be suffering from a mood or thought disturbance is unsupported by the Report and the record. When asked whether it would be beneficial to have Defendant further evaluated for a mood disturbance at this point before a decision regarding competency is made, Dr. Campbell stated

> There was no indication to me that [Defendant]'s perception of his current circumstances—what he's charged with, how he got charged with the crime that he is charged with, or his ability to communicate that—was being impaired by anything. So he certainly could have a mood disturbance that still wouldn't be impairing his ability to understand the proceedings against him or to assist you in preparing his defense. So whether he's got a mood disturbance or not, there is no indication to me that he's not able to do the things that he would need to be able to do to proceed competently. At least I didn't see any evidence of that, even— and I feel comfortable but I could say—even if he does have a mood disturbance, I don't believe that mood disturbance is to the level that it's impairing his ability to understand the proceedings against him or to assist you in preparing a defense.

Defendant has produced no additional evidence outside of the Report and Dr. Campbell's testimony, and both clearly reflect that Defendant understands the nature of the criminal proceedings against him, is capable of properly assisting in his defense, and has no difficulty in his ability to communicate and understand questions.

Based on all the available information, Dr. Campbell concluded that "in the opinion of the undersigned evaluator, [Defendant] is **not** currently suffering from a mental disease or defect

rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or properly assist in his defense," (D.E. 58 at 11), and based upon the preponderance of the evidence, the Court agrees. Dr. Campbell is the only qualified expert that testified that can address competency under the applicable legal standard, and her report and testimony reflect a long-term evaluation of Defendant with accepted testing and observation methods. Dr. Campbell's testimony supports a finding that Defendant possesses "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). There is no evidence to the contrary.

## IV.

For the foregoing reasons, the Court finds that, per 18 U.S.C. § 4241(d) and based on the evidence presented, the Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his own defense. Therefore, the Court **RECOMMENDS** that the District Judge find that Defendant is competent to face further proceedings, to include trial, in this matter.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. Rule 59(b) requires that specific written objections be filed within fourteen (14) days of service of this Recommended Disposition. Failure to object per Rule 59(b) waives a party's right to review.

This the 8th day of May, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge