UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Criminal No: 6:16-cr-00022-GFVT-HAI-1 |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIE McCLOUD, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Report and Recommendation filed by United States Magistrate Judge Hanly A. Ingram. [R. 67.] The Report and Recommendation addresses the issue of whether Defendant Willie McCloud is competent to proceed to trial. Magistrate Judge Ingram recommended this Court find the Defendant competent to face further proceedings, including trial. [*See id.*] This Court agrees with his conclusion, adopts his Recommended Disposition, and DENIES Defendant's objections to the Recommended Disposition.

**I**

**A**

In a superseding indictment returned July 28, 2016, McCloud was charged with one count of distribution of fentanyl resulting in bodily injury in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to distribute heroin and fentanyl in violation of 21 U.S.C. § 846.

After several continuances of his trial date, on December 2, 2016, McCloud made a motion for psychological evaluation and mental competency evaluation. [R. 44.] The same day, McCloud gave notice to the Government that he may assert an insanity defense at trial. [R. 45.] The Magistrate Judge conducted a telephonic conference and granted the Defendant's motion for

mental competency hearing and exam and also granted an oral motion made by the United States for a sanity examination. [R. 47; 51.] The Defendant was transported to the Federal Medical Center in Lexington for his psychological examination. [R. 53.] FMC Lexington requested additional time to conduct the relevant assessments [R. 55] and a psychiatry report was filed in the record on April 17, 2017. [R. 58.]

The Competency Report evaluated McCloud on several different levels and was issued by Dr. Judith Campbell, Forensic Psychologist. [R. 58.] In assembling this report, McCloud was clinically interviewed by Dr. Campbell, examined by medical staff, observed regularly by correctional staff and other staff members, administered two psychological tests, given a personal history questionnaire and given the opportunity to review all the information collected. [R. 68 at 2.] Finally, Dr. Campbell also spoke to AUSA Jason Parson and Defense counsel Brandon Storm concerning McCloud. [*Id*.]

McCloud was evaluated using the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV) to assess his "overall cognitive functioning." [R. 58 at 4.] McCloud's intellectual abilities scored in the "Average to High Average range." [*Id*.] McCloud was also evaluated using the Minnesota Multiphasic Personality Inventory, Second Edition, (MMPI-2). [R. 58 at 5.] McCloud's "performance on the MMPI-2 is suggestive of a severe personality disorder and indicates he has a tendency to abuse illicit substances." [R. 58 at 5.] McCloud also provided written responses to a "series of open-ended, competency related and personal history questions and demonstrated a sophisticated understanding of the court process, his criminal charges, and possible consequences of prosecution and conviction." [R. 58 at 5.] The competency report concluded that McCloud did not have a "severe mental illness or mental defect . . . [that would] preclude his ability to proceed competently" and "was able to

demonstrate a basic rational and factual understanding of the charges against him, an ability to recall the events leading up to the alleged offense behaviors, and a willingness to assist his lawyer in preparing his defense." [*Id.*] Due to McCloud's "history of chronic substance abuse," Dr. Campbell recommended the Defendant "be further evaluated regarding the presence of a mood or thought disturbance once his current case is adjudicated." [R. 58 at 9.] As a result of his evaluation, McCloud "was prescribed psychiatric medication[,] specifically Buspar, . . . and he reported the medication caused a remittance of his symptoms of irritability, anxiety, and difficulty sleeping." [R. 58 at 10.] Finally, Dr. Campbell expressed her expert opinion that "McCloud is currently competent to stand trial." [R. 58 at 11.]

Dr. Campbell also evaluated McCloud to determine whether he was insane at the time the offense was committed. [R. 58 at 14.] Based on "[r]eports form collateral sources" and interviews with McCloud, Dr. Campbell gave her expert opinion that "at the time of the commission of the acts constituting the alleged offenses, Mr. McCloud was not suffering from a mental disease or defect such that he was unable to appreciate the nature and quality or the wrongfulness of his actions." [R. 58 at 15.]

The Magistrate Judge held a competency hearing on May 2, 2017 and Dr. Campbell testified via video conference. [R. 66; audio recording available in clerk's office in London, Kentucky.] At the hearing, Dr. Judith Campbell said doctoral students conducted some of the assessments performed on McCloud and that she personally went back and checked all the scores herself. [R. 66.] She indicated that any disparity in test scores was likely attributable to substance abuse. [*Id.*] Further, McCloud's central nervous system was likely improving from his consistent years of substance abuse and it would be difficult to determine at this juncture whether he has a personality disorder or not due to his history of substance abuse. [*Id.*] Dr.

Campbell admitted that "although the combination of a severe personality disorder and a mood or thought disturbance might impair one's ability to stand trial, no issue arises in this case because Defendant did not appear to be suffering from a mood or thought disturbance." [R. 67 at 7.]

Judge Ingram entered a Recommended Disposition [R. 67] and the Defendant timely objected [R. 68]. His trial has been continued generally pending the resolution of McCloud's competency to stand trial. [R. 47.]

B

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the R&R or else waive his rights to appeal. In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d. 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997).). A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the magistrate's efforts and wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

McCloud made a timely objection to the Recommendation. [R. 68.] McCloud objects in the following ways: 1) he continues to suffer from a "severe personality disorder . . . despite being prescribed medication;" 2) the competency report and sanity report suggest McCloud should be further evaluated for a personality disorder; and 3) "Dr. Campbell testified that a mood or thought disorder coupled with a personality disorder could impact competency to stand trial." [*See* R. 68 at 2.] Maxwell's objections are sufficiently definite to trigger this Court's obligation

4

to conduct a *de novo* review, though this Court points out that these issues were all addressed in the Magistrate Judge's Recommended Disposition. *See* 28 U.S.C. § 636(b)(1)(c). Regardless, the Court has satisfied the duty for a de novo review, reviewing the entire record, including the motions, briefing, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. This Court also listened to the audio recording of the hearing before Magistrate Judge Ingram. For the following reasons, Defendants' objection will be **OVERRULED**.

## II

"[T]he bar for incompetency is high." *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008). The test to determine whether a Defendant is capable of stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see also* U.S.C. § 4241(a). Even a defendant who is mentally ill can be found competent to stand trial. *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016) (internal quotations and edits omitted).

First, McCloud asserts that he continues to suffer from severe personality disorder despite being prescribed Buspar. [*See* R. 58 at 4 ("[Buspar] gave [McCloud] some relief.").] The Defendant misstates the standard for being competent to stand trial. Indeed, many defendants with all sorts of mental health disorders stand trial every day. Though the Defendant continues to suffer some symptoms even with his current medication regimen, he has not offered evidence of any sort that these symptoms affect his ability to consult with his lawyer or his ability to understand factually and rationally the proceedings against him.

5

Second, McCloud objects that the report from Dr. Campbell is unclear on whether McCloud suffers from a mood or thought disturbance. [R. 68 at 4.] The Defendant points out that Dr. Campbell administered only two (2) psychiatric tests on a single day while at FMC Lexington. However, McCloud ignores the other evidence considered by Dr. Campbell, the short answer questions answered by Defendant, the meetings with clinicians, the observation of other staff in the facility, and Dr. Campbell's discussions with the attorneys in this case. In short, Dr. Campbell, though recommending further testing for the Defendant, still asserted that the Defendant was competent to stand trial based on the standard from *Dusky*. Whether or not Defendant does have an additional disorder that may come to light with testing is not relevant, as he is able to rationally communicate with his lawyer and understands the criminal case brought against him. The Defendant has presented no evidence that he has previously been diagnosed with any other mental illness and the speculation by Dr. Campbell is not enough for this Court to rely on in assessing competency.

It is not apparently clear how the Defendant's Third Objection is different from his second objection, that mood or thought disorder coupled with severe personality disorder could impact McCloud's competency to stand trial. [R. 68 at 8.] However, the *Dusky* principle still applies and McCloud's psychiatric report still asserts that he is competent to stand trial. McCloud has presented no additional evidence for this Court to consider, so this Court must rely heavily on Dr. Campbell's reports and testimony at the competency hearing. Dr. Campbell repeatedly and assuredly concluded that McCloud is competent to proceed to trial and meets both the standards from *Dusky*.

**III**

Accordingly, and for the reasons stated above,

1. The Recommended Disposition **[R. 67]** as to McCloud's competency is **ADOPTED** as and for the Opinion of the Court;

2. The Defendant, Willie McCloud, is found to be **competent** to face further proceedings, including trial, in this matter;

3. Trial for Willie McCloud, which was postponed pending the resolution of the competency issues, will be set for **Tuesday, October 31, 2017**, at the hour of **10:00 a.m.** in **London, Kentucky**;

4. The pretrial deadlines set forth in the Court's Standing Pretrial and Trial Management Order shall be relative to this new trial date;

5. In the event a plea agreement is reached in this matter, any motion for rearraignment shall be filed **no later than (14) days** prior to the trial date. Further, if the parties execute a written plea agreement, the United States of America is directed to provide a courtesy copy to the undersigned's Chambers at *GFVT_chambers@kyed.uscourts.gov* **no later than two (2) days** before the scheduled rearraignment; and

6. The time between June 9, 2017, when this case was assigned to the undersigned, and October 31, 2017, is **DECLARED** excludable pursuant to 18 U.S.C. §§ (7)(A)-(B); *see also* [R. 44; R. 70]. For the reasons set forth herein, the Court **FINDS** that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendants in a speedy trial.

This the 10th day of August, 2017.

Gregory F. Van Tatenhove
United States District Judge